IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REDGUARD, LLC,

       *Plaintiff*,

v.

BOXWELL, LLC,

       *Defendant)*.

Case No. 23-CV-01261-EFM-GEB

**MEMORANDUM AND ORDER**

    Before the Court is Defendant Boxwell LLC's Renewed Motion to Dismiss (Doc. 20) Plaintiff RedGuard, LLC's claims concerning the alleged existence of a joint venture between the parties.  Because the parties' prior contract prevents the Court from finding that the parties' had a joint venture, this Court dismisses RedGuard's claims for declaratory judgment, breach of contract, promissory estoppel, and misrepresentation.  However, RedGuard's claim for unjust enrichment—based on the sales proceeds Boxwell received while the parties were acting in business together—survives.

          **I.**       **Factual and Procedural Background**[1]

    RedGuard is a storage container manufacturing company incorporated in Kansas that has its principal place of business in Wichita.  Boxwell is a Colorado limited liability company that sells and leases storage containers.  Rodney Bolls is the registered agent and an owner of Boxwell.

---

[1] The facts in this section are taken from Plaintiff's Complaint and are considered true for the purposes of this Order.

Prior to November 2021, RedGuard and Boxwell began negotiations to create a joint venture ("joint venture") for the purpose of manufacturing, selling, and servicing portable storage containers. The plan was that RedGuard would manufacture the containers while Boxwell would sell and service them.

On November 22, 2021, Boxwell sent RedGuard a Letter of Intent ("LOI"). The stated purpose of the letter was "to summarize the principal terms of a proposal being considered by" the parties to form a joint venture together. The LOI did not purport to create the joint venture—rather, it listed the "contemplated" terms for the "Proposed Transaction" and "Proposed Definitive Agreements." In general, the proposed terms contemplated a fifty/fifty distribution of profits. It also stated that Kansas law would apply to the interpretation of its provisions.

Although the bulk of the LOI laid out "proposed" terms and conditions for the joint venture, it also contained several contractual provisions. For example, Section 6 of the LOI gave each party the right to access the other's facilities, contracts, book, and records. Additionally, in Section 7, the parties agreed to maintain their relevant assets in good working condition and not incur any material liabilities or commitments.

In Section 8, the LOI indicated it would terminate at the earliest of several events, including at 11:59PM, December 31, 2021. Paragraph 8 also stated:

> [N]otwithstanding the foregoing, (i) Section 9, Section 10, Section 11, Section 12 and Section 13 shall survive and remain in effect following such Termination and (ii) in no event will a Termination affect any rights of a Party with respect to any breach of a Binding Provision (as defined below) prior to such Termination.

Relevant here, Section 12 and 13 state as follows:

> 12. Expenses. Each of the Parties will pay its own costs and expenses incurred in connection with the Proposed Transaction (including the fees and expenses of any of its investment bankers or other advisors).

13. No Binding Agreement. This Letter does not reflect any form of legally binding commitment or obligation on the part of either Party or its affiliates, except with regard to Section 8, Section 9, Section 10, Section 11, Section 12, and Section 13 hereof (collectively, the "Binding Provisions"). No contract or agreement providing for any transaction involving any Assets or otherwise with respect to the joint venture Business or Proposed Transaction, joint venture, partnership or fiduciary relationship shall be deemed to exist between the Parties or any of their affiliates unless and until final definitive agreements with respect to the Proposed Transaction have been executed and delivered and only thereafter as and to the extent specified therein. The Parties hereby acknowledge and agree that (a) the terms in this Letter do not contain all material terms to be negotiated as part of the Definitive Agreements, the Ancillary Agreements or otherwise with respect to the Proposed transaction; (b) no oral agreement, public or private statements or course of conduct or dealings between the Parties and/or their affiliates may be introduced as evidence that there exists a joint venture or partnership or any binding contract or commitment between the Parties with respect to any of the transactions contemplated hereby, other than the Binding Provisions; and (c) neither Party shall be justified in relying on any provision of the Letter (other than the Binding Provisions, subject to Section 8), in connection with the transactions hereby.

RedGuard's representative signed the LOI on December 31, 2021, the same day it was set to terminate. Thereafter, the parties began initiating steps to bring about the plans proposed by the LOI. RedGuard bought real estate and initiated manufacturing operations while Boxwell began soliciting sales orders for the portable storage containers from customers. The parties were in frequent communication, discussing processes for hiring employees, brainstorming names for the joint venture, and trademarking a logo for the name "High Plains." However, they never executed any finalized agreements formalizing the existence of the joint venture.

Throughout the spring and summer of 2022, Boxwell executives referred to "our employee/independent numbers" and "our costing/profitability," utilized similar "we" language when discussing the parties' dealings. Along with this language, Boxwell consistently reaffirmed that the parties were in a joint venture. For example, on March 23, 2022, one of Boxwell's executives emailed RedGuard stating, "*We're* six months into our joint venture."[2] Boxwell also

---

[2] Emphasis added.

consistently stated that the parties would share profits and losses on a fifty/fifty basis, such as stating on June 30, "I'd like confirmation back from Red Guard that the losses are absorbed at the joint venture level (50/50) between Boxwell/Red Guard." RedGuard affirmed, and the parties continued to maintain that all profits and losses would be shared equally. Their business plan initially appeared successful, with Bolls stating on March 2, 2022, "We're currently at 1312 units sold for $8,442,100 . . . heading to the trade show next Wed – Fri. Let's start hiring for that 3rd shift!"

However, on September 9, 2022, Bolls sent a letter to RedGuard stating, "At this point, unless we materially change Boxwell's and the joint venture's obligations to make this a financially sustainable relationship, we think it is time to unwind the venture." Beginning in December 2022, the parties ceased conducting business activity or hiring employees together. Instead, Boxwell issued purchase orders to RedGuard for storage containers and RedGuard fulfilled those purchase orders in exchange for payment in full from Boxwell. RedGuard alleges that the joint venture ceased as of December 31, 2022, at which time the parties' relationship became a traditional manufacturer and re-seller relationship.

After considering each parties expenses and losses, RedGuard calculated that Boxwell owed it $1,769,580.92, a figure which would result in the parties splitting the losses fifty-fifty. After Boxwell refused to pay RedGuard anything, RedGuard initiated this lawsuit. In its Complaint, RedGuard asserts five counts under Kansas state law: (1) declaratory judgment; (2) breach of contract; (3) promissory estoppel; (4) unjust enrichment; and (5) misrepresentation. Boxwell now seeks dismissal of RedGuard's claims under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[9] Finally, the court may "consider documents attached to or

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[10]

### III.   Analysis

The heart of the parties' dispute is whether they formed a joint venture in 2022. Count I asks for declaratory judgment regarding the rights and duties of the parties under the alleged joint venture or, in the alternative, on theories of waiver and estoppel. Count II of RedGuard's Complaint is for breach of the contract for the alleged joint venture. Count III asserts promissory estoppel, and Count IV asserts unjust enrichment. Finally, Count V is a claim for misrepresentation under Kansas tort law.

Unsurprisingly, a sizable portion of the parties' briefs concerns the LOI they entered into on December 31, 2021. Although RedGuard did not attach the LOI to the pleadings, it nevertheless references the LOI in the Complaint. Neither party disputes its authenticity. Therefore, the Court may consider the LOI in full without converting Defendant's Motion to one for summary judgment.

**A.     Breach of contract—Count I**

RedGuard first asserts a claim for breach of an implied contract that allegedly created a joint venture between the parties. Before reaching the elements of RedGuard's claim, the Court must first examine and interpret the LOI. "Contract interpretation is a question of law."[11] Under Kansas law, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent."[12] Courts must construe "all provisions together and in harmony with each other rather

---

[10] *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1286 n.3 (10th Cir. 2023) (further citations and quotations omitted).

[11] *See Johnson v. Heath*, 56 F.4th 851, 863 (10th Cir. 2022) (further citation and quotations omitted); *see also Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 264 (2013).

[12] *Waste Connections*, 298 P.3d at 264 (quoting *Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 888, 896 (2011)).

than by critical analysis of a single or isolated provision."[13] Kansas law "favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided."[14] When contract terms are clear, courts must determine the parties' intent from the contract's language alone instead of utilizing rules of construction or considering extrinsic evidence.[15] Courts will respect parties' freedom to contract as long as the contract is neither "illegal nor contrary to public policy."[16]

"The question of whether the language in a written contract is ambiguous is one of law for the court."[17] Similarly, the parties' assessment of a contract's ambiguity is irrelevant to the court's finding as to the same.[18] Rather, a contract's terms are ambiguous only if "a contract's text can reasonably support two or more interpretations."[19] "But courts should not strain to find an ambiguity where in common sense there is none."[20]

Relying on Sections 8, 12, and 13, Boxwell argues that the LOI by its terms precludes the existence of an joint venture between the parties absent a finalized written agreement. In contrast, RedGuard makes three primary arguments: (1) the LOI never took effect because it expired the same day RedGuard's representative signed it; (2) the LOI only prohibits formation of a joint

---

[13] *Iron Mound, LLC v. Nueterra Healthcare Mgmt., LLC*, 298 Kan. 412, 313 P.3d 808, 812 (2013) (further citations and quotations omitted).

[14] *Id.* at 265 (further citations and quotations omitted).

[15] *Id.* at 264.

[16] *Waste Connections*, 298 P.3d at 265; *see also First Sec. Bank v. Buehne*, 314 Kan. 507, 501 P.3d 362, 366 (2021) ("[T]he paramount public policy is that freedom to contract is not to be interfered with lightly." (further citations and quotations omitted)).

[17] *Waste Connections*, 298 P.3d at 265

[18] *Id.*

[19] *Matter of Marriage of Nelson*, 58 Kan. App. 2d 920, 475 P.3d 1284, 1289 (2020).

[20] *Id.*

venture only *before* the LOI terminated; and (3) Boxwell waived the surviving provisions of the LOI.

1. *The LOI went into effect on December 31, 2021.*

RedGuard first argues that the LOI never went into effect and therefore was never binding on the parties. Under Section 8, the LOI terminated at the earliest of several events, including on December 31, 2021, at 11:59PM. Because RedGuard's representative signed the LOI on that date, RedGuard contends that the LOI effectively terminated *before* it ever went into effect. However, nothing before the Court suggests that RedGuard's representative signed the LOI in the 59 seconds between 11:59PM and 12:00AM. Although the Court must draw all reasonable inferences in RedGuard's favor, such an inference would not be reasonable. Based on the allegations before the Court, it is clear that the LOI went into effect before terminating later that same day.

2. *Sections 8 through 13 survived the LOI's termination.*

RedGuard's next argument is that the Binding Provisions did not survive termination—or at least were not intended to apply after termination. In making this argument, RedGuard relies on Section 8's final clause to infer a time limitation onto Section 13 and the other Binding Provisions. As noted, Section 8 governs the termination of the LOI. However, two clauses are particularly relevant here: Section 8's survival clause and its final clause. Directly following the language setting a time for termination, Section 8 states "notwithstanding the foregoing, (i) Section 9, Section 10, Section 11, Section 12 and Section 13 shall survive and remain in effect following such Termination." Section 8's final clause then states that "in no event will a Termination affect any rights of a Party with respect to any breach of a Binding Provision (as defined below) prior to such Termination."

By specifying the parties' right to enforce the Binding Provisions prior to the LOI's termination, RedGuard believes Section 8 should be interpreted to hold that the Binding Provisions do not survive past termination. This creative interpretation—which contradicts the *immediately preceding clause*—cannot survive a reasonable reading of the LOI's provisions taken together. Indeed, the LOI as a whole is inherently forward-looking. It consistently deals with "proposed" terms and "contemplated" business dealings. Considering the LOI in its entirety, the last clause clearly means what it says—the Binding Provisions are enforceable both before and after termination, regardless of when any breach takes place.

Contrary to RedGuard's argument, taking Section 8's final clause at face value does not render it superfluous or redundant. But even if it did, "no rule of interpretation prevents parties from building redundancies into their contracts. Indeed, some redundancies can improve a contract's clarity."[21] Here, the final clause does not repeat conditions elsewhere in the LOI. Neither does it contradict any provisions. Rather, it exists for the purposes of clarity, specifying that not only do the Binding Provisions survive termination, but the right to sue under them for prior breaches also survives termination. Perhaps this clarification was unnecessary when considering basic contract law principles. But it is the only reasonable interpretation. Were the Court to credit RedGuard's creative interpretation, it would void the clear and unambiguous language stating that Sections 8 through 13 survive termination. And upholding this final clause in its clear and unambiguous language is the only way to fully respect the parties' freedom to

---

[21] *Coshocton Grain Co. v. Caldwell-Baker Co.*, 2017 WL 3605338, at *32 (D. Kan. Aug. 22, 2017) (citations omitted); *see also U.S. W. Inc. v. Time Warner Inc.*, 1996 WL 307445, at *15 (Del. Ch. June 6, 1996) ("While redundancy is sought to be avoided in interpreting contracts, this principle of construction does not go so far as to counsel the creation of contract meaning for which there is little or no support in order to avoid redundancy.").

contract. Thus, under the plain language of Section 8, all the Binding Provisions survive termination and remain in effect to this day.

RedGuard briefly argues that if sections of the LOI survive its termination, then the termination itself is superfluous. Contrary to RedGuard's assertion, the LOI's termination date applies to other covenants within the LOI, such as Sections 6 and 7. Thus, by specifically excluding Sections 8 through 13 from termination, the parties evidenced their intent to distinguish between rights that expire and rights than exist in perpetuity—or at least until the LOI was modified or superseded by a finalized agreement. The survival clause is not superfluous.

If the Court disagrees with its interpretation, RedGuard contends that the Court should at least find the final clause to be ambiguous. It overstresses, however, the Court's ability to find ambiguity in an otherwise clearly worded contract. Despite RedGuard's invitation, the Court will not strain to find ambiguity where none exists.

3.   *Section 13 forecloses RedGuard's waiver argument*

RedGuard next asserts that Boxwell—through its course of performance—waived any possible rights under Section 13 by consistently holding out to RedGuard and others that the parties were in a joint venture. "Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right."[22]

---

[22] *Steckline Commc'ns, Inc. v. J. Broad. Grp. of Kan., Inc.*, 305 Kan. 761, 388 P.3d 84, 91 (2017) (quoting *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 561 P.2d 792, 795 (1977)) (emphasis omitted); *see also Thoroughbred Assocs., L.L.C. v. Kan.City Royalty Co., L.L.C.*, 58 Kan. App. 2d 306, 469 P.3d 666, 679 (2020) ("[O]ne can infer a party's intent to waive a contractual right from conduct inconsistent with an intent to exercise the right."). Although RedGuard argues waiver and estoppel together, Kansas law distinguishes between these two legal principles. *See Steckline Commc'ns*, 388 P.3d at 91–92. Therefore, the Court will address them separately.

However, a party may "inoculate itself against future claims that it has waived a contractual right by including a valid anti-waiver provision in the contract."[23] That is, "no . . . inference of waiver can be drawn when the unambiguous language of the contract states a contrary intention."[24] For example, a defendant's "contention that [it] reasonably relied on the plaintiff's past practice of overlooking defaults as an implied waiver of [its] obligation to pay the installments promptly must fail in light of the unambiguous and contrary provision" in the governing contract.[25] Of course, an anti-waiver provision must be unambiguous.[26] But the Court is unaware of any requirement in Kansas law that the provision expressly include the term "waiver."

Although Section 13 does not include the term "waiver," it clearly and unambiguously functions as an anti-waiver provision. That is, Section 13 prohibits either party from relying on any "oral agreement, public or private statements or course of conduct or dealings between the Parties and/or their affiliates . . . as evidence that there exists a joint venture or partnership or any binding contract or commitment between the Parties with respect to any of the transactions contemplated hereby." By including this language, the parties made certain that nothing except a finalized written agreement could create any legal obligations regarding the proposed joint venture. In other words, it expressly inoculates the parties from the very claims RedGuard seeks to assert here.

RedGuard's assertion that the conduct covered by Section 13's anti-waiver provision is capable of waiving the anti-waiver provision is confusing and illogical. Were the Court to adopt

---

[23] *Steckline Commc'ns*, 388 P.3d at 91.

[24] *Postal Sav. & Loan Ass'n v. Freel*, 10 Kan. App. 2d 286, 698 P.2d 382, 384 (1984).

[25] *Id.*

[26] *See First Nat. Bank of Omaha v. Centennial Park, LLC*, 48 Kan. App. 2d 714, 303 P.3d 705, 715 (2013); *see also Found. Prop. Invs., LLC v. CTP, LLC*, 286 Kan. 597, 186 P.3d 766, 772–73 (2008) (holding optional acceleration provision did not also operate as an anti-waiver provision).

RedGuard's position, it would improperly usurps the parties' freedom to contract. Thus, the Court is precluded by the parties' own contractual language from considering their course of performance as evidence of a joint venture between them.

Under the terms of the LOI, the Court cannot consider the facts alleged by RedGuard to support its contention that a joint venture existed between the parties. Without a joint venture, RedGuard's breach of contract claim fails as a matter of law. Accordingly, the Court grants Boxwell's Motion as to Count II.[27]

**B.      Promissory estoppel—Count III**

For Count III, RedGuard asserts the equitable claim of promissory estoppel. "Promissory estoppel is rooted in contract law concepts of protecting reliance and expectation interests."[28] It "is an equitable doctrine designed to promote some measure of basic fairness when one party makes a representation or promise in a manner reasonably inducing another party to undertake some obligation or to incur some detriment as a result."[29] Thus, "[p]romissory estoppel and contract law are closely related and serve the same fundamental purposes by providing means to enforce one party's legitimate expectations based on the representations of another party."[30] In the context of promissory estoppel, "a party's reasonable reliance on a promise prompting a reasonable change in position effectively replaces the bargained for consideration of a formal contract, thereby creating what amounts to a contractual relationship."[31]

---

[27] As noted below, to the extent RedGuard's claim for declaratory judgment is premised on its erroneous interpretation of the LOI, the Court dismisses Count I as well.

[28] *Bouton v. Byers*, 50 Kan. App. 2d 34, 321 P.3d 780, 793 (2014).

[29] *Id.* at 787.

[30] *Id.*

[31] *Id.*

There is no dispute that Boxwell's representations to RedGuard that it would assume half of the losses induced RedGuard to spend millions of dollars in manufacturing costs. And given the Court's interpretation of the LOI, there was no contract creating a joint venture or governing the parties' relationship. Thus far, the situation seems primed for a promissory estoppel claim to fill the gap.

Nevertheless, the Court cannot reach the elements of a promissory estoppel claim because of Section 13 of the LOI. In Section 13, the LOI explicitly states that "no oral agreement, public or private statements or course of conduct or dealings between the Parties and/or their affiliates may be introduced as evidence that there exists a joint venture or partnership or any binding contract *or commitment*." Those final two words bar RedGuard's promissory estoppel claim.

At its core, promissory estoppel is about one party's commitment to the other. Here, Section 13 of the LOI forbids the Court from considering any of Boxwell's statements or actions as evidence that it made any commitment to RedGuard regarding the proposed joint venture and its business. Without such evidence, or rather factual allegations at this stage, the Court is forced to conclude that RedGuard's promissory estoppel claim fails as a matter of law. Such a holding comports with the parties' expressed intent that nothing short of a finalized written agreement could suffice to create any duties with regard to the proposed joint venture. Accordingly, the Court grants Boxwell's Motion to Dismiss as to Count III. Because RedGuard's claim for declaratory judgment is premised solely on its theory of breach of contract and waiver or estoppel, the Court also dismisses Count I in its entirety.

**C.    Unjust enrichment—Count IV**

RedGuard's second equitable claim is unjust enrichment. The elements of unjust enrichment are: "(1) a benefit conferred upon one person by another; (2) an appreciation or

knowledge of the benefit received; and (3) the acceptance or retention of the benefit by the individual receiving the benefit under such circumstances as to make it inequitable for the individual to retain the benefit without payment of its value."[32]

Although no Kansas court has spoken directly to the issue, "[u]nder Kansas law, the equitable claims of 'quasi-contract,' 'unjust enrichment,' and 'quantum meruit' are often referenced interchangeably."[33]  Kansas courts have held that unjust enrichment or quantum meruit "is not available when an express contract addresses the obligations of the parties."[34]  Thus, where a valid contract governs the conduct at issue, claims for unjust enrichment must be dismissed.[35]

Boxwell argues that the LOI—specifically Section 12—prevents RedGuard from asserting a quasi-contract claim as a matter of law.  However, the availability of an unjust enrichment claim depends upon how RedGuard characterizes the benefit received by Boxwell.  There is no question that Section 12 states that each party will bear its own expenses and costs.  Had RedGuard attempted to assert an unjust enrichment claim against Boxwell to simply recover 50% of its expenses and costs, its claim would fail based on Section 12.

But Section 12 does not mention any division of sales proceeds derived from the parties' efforts to manufacture and sell storage containers.  This is important because RedGuard alleges that the benefit received by Boxwell was millions of dollars in sales proceeds stemming in large

---

[32] *Hurtig v. Mattox*, 408 P.3d 492 (table), 2017 WL 6542803, at *4 (Kan. Ct. App. 2017) (quoting *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, 908 P.2d 1315, 1322 (1995) (further citation and quotations omitted)).

[33] *See Unicredit Bank AG v. Jue-Thompson*, WL 6185750 (D. Kan. Nov. 26, 2013); *cf. Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1175 (D. Kan. 2017) (recognizing the interchangeability of these terms but refusing to assume without clear authority that they are necessarily duplicative).

[34] *Wolfert Landscaping Co. v. LRM Indus., Inc.*, 287 P.3d 300 (table), 2012 WL 5392143, at *4 (Kan. Ct. App. 2012); *see also JA-DEL, Inc. v. Winkler*, 432 P.3d 694 (table), 2019 WL 166936, at *5 (Kan. Ct. App. 2019) (holding the same expressly in reference to unjust enrichment);

[35] *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1037-38 (D. Kan. 2018).

part from RedGuard's efforts in manufacturing the storage containers. Under Section 12, Boxwell bore complete responsibility for its own costs in selling the storage containers. Importantly, Boxwell had no expectation of benefit and is not necessarily entitled to 50% of the proceeds because there was not contract or joint venture between the parties. Rather, each cent that Boxwell received based on RedGuard's work is a benefit for which the LOI's Binding Provisions do not provide. Thus, the first element of unjust enrichment is met.

Similarly, RedGuard's alleged facts also satisfy the second element. Boxwell undoubtedly knew of the sale proceeds it received, as it sent 50% of those proceeds to RedGuard. Likewise, the frequent communications between the parties, as well as RedGuard's request for $1,769,580.92, mean it knew of RedGuard's efforts and expenses in manufacturing the storage containers.

Having satisfied the first two elements, the Court turns to the third element of an unjust enrichment claim. Here, the issue becomes whether Boxwell's receipt and retention of 50% of the sales proceeds for those containers is inequitable. In examining this issue, the Court must consider the amount of effort each party invested in procuring those proceeds. Crediting RedGuard's allegations as true, it spent $3,539,161.84 more than Boxwell in the process of their failed business dealings.[36] Based on the relative losses absorbed by the parties after a fifty/fifty division of the proceeds, it appears that RedGuard exerted considerably more effort and resources to bring about that benefit than Boxwell.

---

[36] The Court reaches this number by multiplying RedGuard's requested damages ($1,769,580.92) by two. This reflects the excess loss suffered by RedGuard after accounting for Boxwell's losses as well.

To clarify, the issue is not whether Boxwell should pay for RedGuard's expenses or losses. RedGuard agreed to bear those on its own under Section 12 of the LOI, and that provision remains binding. Nevertheless, RedGuard's expenses are highly relevant as evidence of the amount of effort and resources RedGuard exerted in conferring the benefit of the sales proceeds on itself and Boxwell.

Of course, the equitable division of the parties' sales proceeds is a highly factual question. But for Boxwell to retain 50% of the sales proceeds after putting in significantly less than 50% of the effort and resources to attain those proceeds would be inequitable. For the purposes of this Order, the Court must conclude that RedGuard has alleged facts plausibly satisfying the third element of their unjust enrichment claim. Therefore, the Court denies Boxwell's Motion as to Count IV.

**D.     Misrepresentation—Count V**

Lastly, RedGuard brings a tort claim for "misrepresentation." It does not specify whether it means negligent misrepresentation or fraudulent misrepresentation. From the language of the Complaint—stating Boxwell failed to exercise "reasonable care or competence"—the Court infers that RedGuard intends to bring a negligent misrepresentation claim.[37]

The elements for a negligent misrepresentation claim are as follows:

> (1) The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating it; (2) the party receiving the false information reasonably relied on it; and (3) the person relying on the false information is a person or one of a group of persons for whose benefit and guidance the information is supplied or a person or one of a group of persons to whom the person supplying the information knew the information would be communicated by another; and (4) the party receiving the information suffered damages.[38]

---

[37] This inference finds support in the parties' briefing, which is devoid of any reference to fraud.

[38] *Rinehart v. Morton Bldgs., Inc.*, 297 Kan. 926, 305 P.3d 622, 630 (2013).

The only element that Boxwell appears to contest is the second—reasonable reliance. Unsurprisingly, Boxwell turns to Section 13 to of the LOI to argue that RedGuard's reliance on its representations in the face of a contrary governing contract is unreasonable as a matter of law.

Kansas law is clear that "contract provisions . . . can defeat a claim of negligent misrepresentation."[39]  For example, in the real estate context, Kansas courts have repeatedly held that provisions in purchase agreements which disclaim the buyer's reliance on the seller's representations may defeat a claim for negligent misrepresentation.[40]  This is because "competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound."[41]

RedGuard does not allege fraud, mistake, or duress in the execution of the LOI.  Instead, it contends that it was entitled to reasonably rely on Boxwell's representations throughout 2022.  But based on the clear, negotiated language in Section 13 of the LOI, RedGuard's argument must fail. RedGuard explicitly agreed that it could not consider any "oral agreement, public or private statements or course of conduct or dealings between the Parties" as evidence of the joint venture's

---

[39] *Phillips v. Tyler*, 35 Kan. App. 2d 256, 129 P.3d 656, 659 (2006).  Kansas caselaw lacks cases dealing with a similar factual situation to the present case.  But the cases that do exist are consistent with other states' courts which have directly held that reasonable reliance cannot be found in the "light of contrary written information."  *Shelter Mortg. Corp. v. Castle Mortg. Co., L.C.*, 117 F. App'x 6, 10 (10th Cir. 2004) (quoting *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1068 (Utah 1996)); *see also Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 98 (10th Cir. 2007) (discussing Colorado law, which holds parties may contractually prohibit the other from asserting a negligent misrepresentation claim by using "clear and specific language." (quoting *Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 74 (Colo. 1991)); *but see Cabinet Distributors, Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo. Ct. App. 1998) (holding integration clauses cannot prevent claims for negligent misrepresentation as well as fraud).

[40] *See, e.g.*, *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191, 1198–99 (2004) ("This conclusion is consistent with the majority rule that an 'as is' provision in a real estate contract does not bar a buyer's claim based on fraud or intentional misrepresentation."); *Phillips*, 129 P.3d at 659; *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 923 P.2d 513. 517 (1996) ("We further conclude that real estate brokers may protect themselves from negligent misrepresentation actions by disclaiming knowledge of the property's defects and having a buyer or seller acknowledge such disclaimer.").

[41] *Alires*, 85 P.3d at 1198 (further citations and quotations omitted).

existence or any other commitment between the parties.  The Court must conclude that Section 13 precludes any reasonable reliance on Boxwell's statements or course of conduct as a matter of law.  Accordingly, the Court dismisses Count V.

**IT IS THEREFORE ORDERED** that Defendants (Doc. 20) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Counts I, II, III, and V of RedGuard's Complaint are **DISMISSED**.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE